UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 05-356 (RMU) |
| | : | |
| EDGAR B. FIELDS | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

The United States, by and through its attorney, Kenneth L. Wainstein, the United States Attorney for the District of Columbia, hereby submits its opposition to defendant's Motion to Suppress Evidence and Statements. In support of this pleading, the government makes the following representations: .

### Facts

On August 13, 2005 at approximately 10:36am, United States Park Police Officer Petett observed a brown and white GMC sports utility vehicle with no front tag in the area of Oxon Run Parkway, Mississippi Avenue and 13th Street, SE, Washington, DC. The vehicle was stopped for this traffic violation, and Officer Petett requested the driver's license and registration information. The driver, later identified as the defendant, Edgar Fields, stated that he did not have a driver's license, and that it had expired. At that time, the defendant verbally identified himself to the officer as Lonnelle Lewis Clark. However, he could not provide a social security number, nor did he have any other identification. When the officer asked for the vehicle registration, the defendant reached toward the glove box, then quickly reached away, stating that he did not have the registration. The officer made a radio check of the defendant's driving status (using the name "Clark" that he had

given), and learned that there was no permit for him in the tri-state area. During the radio communication, the officer observed the defendant again reach for the glove box. At that point, the officer ordered the defendant away from the vehicle, and arrested him for no permit. Additional officers arrived, and they searched the vehicle incident to the defendant's arrest in an effort to locate any identification information or vehicle registration. Officer Morales asked the defendant for his real identity, and the defendant then stated that his real name was Edgar Booth Fields. While looking for the vehicle registration, Officer Dowd found a Glock 17 9mm handgun inside the glove compartment. Also inside the glove compartment was the vehicle title, auto inspection form, receipts, pieces of mail, copies of money orders, DC citation, radio faceplate, and keys.

While the defendant was at the police station being prepared for fingerprinting, the defendant noticed that he was being charged with CPWL, and he asked Officer Morales what that meant. Officer Morales advised the defendant that CPWL was an acronym for Carrying a Pistol without a License, and that there was a firearm recovered from the passenger compartment of the vehicle, specifically the glove compartment. At that point, the defendant looked up, sighed and spontaneously uttered "that must have been the gun my uncle showed me last night." Officer Morales advised the defendant that the gun was going to be processed, and if the defendant's comment was true, the results would show that he did not touch the gun. The defendant then spontaneously uttered "I may have held it, and taken the clip out and put it back in, but I don't remember." A short time later, the defendant again sighed and spontaneously uttered "I shouldn't have touched that gun." He was then fingerprinted, and given his Miranda rights to read. He acknowledged his rights, and stated that he understood them. After waiving his Miranda rights, he subsequently, asked for Officer Morales again, and gave him additional information.

<u>Argument</u>

**1. The search of the vehicle was a valid search incident to defendant's arrest, consequently, the physical evidence is not subject to suppression.**

Here, the fact that the defendant was in fact driving without a license has not been contested. Since that is an arrestable offense in the District of Columbia, the validity of the defendant's arrest does not appear to be in dispute. <u>United States v. Belton</u>, 453 U.S. 454 (1981) made it clear that the interior of a motor vehicle could be searched incident to a valid arrest. The <u>Belton</u> Court noted its desire to create a clear rule that could be easily applied and predictably enforced, noting the advisability of providing police officers with a single standard to guide them in their duties. <u>See</u> <u>id</u> at 458-59, (citations omitted). The Court also noted that any container inside the passenger compartment of the vehicle was also subject to search under this rule–regardless of whether the container were open or closed, noting that "the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." <u>See</u> <u>id</u> at 460-61. The Court specifically approved the search of glove compartments under this rule, again, regardless of whether they were open or closed. <u>See</u> <u>id</u> at 460, footnote 4. That the Court's ruling did not exclude locked areas from its ruling is also illustrated by the dissent of Justices White and Marshall, who state that "[t]he Court now holds that as incident to the arrest of the driver or any other person in an automobile, the interior of the car and any container found therein, **whether locked or not**, may not only be seized but also searched even absent probable cause to believe that contraband or evidence of a crime will be found." <u>Id</u> at 472 (emphasis not in original).

Further support for the proposition that <u>Belton's</u> ruling encompassed locked glove compartments is found in the facts of <u>Belton</u> itself. There, the defendant was stopped by police for speeding. During their interview, police smelled burnt marihuana in the car, and noticed an envelope suspected of containing marihuana inside the car. The occupants of the car were arrested for possession of marihuana. Search incident to arrest revealed the presence of cocaine inside a jacket found in the back seat of the car. However, the cocaine was not merely in the pocket of that jacket–the pocket of the jacket was zipped, and had to be unzipped in order for the cocaine to be discovered. At the time that the car was searched and the cocaine recovered, all of its occupants had been removed from the car, and positioned in an area away from the vehicle and away from each other. <u>See</u> <u>id</u> at 455-56. The same logic that permits the search of a zippered pocket would also permit the search of a locked glove compartment. In other words, despite the fact that the area searched was sealed in some way, its search was permissible because the area is within the immediate control of the arrestee. The <u>Belton</u> Court noted that the lower courts were having trouble finding a workable definition of the area within the arrestee's immediate control in the context of automobile searches. Consequently, <u>Belton</u> noted that its ruling was that the area within the "relatively narrow compass of the passenger compartment of an automobile [is] in fact generally, **even if not inevitably**, within the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m.] Id at 460, (citations omitted), emphasis added). It seems clear from this language that the <u>Belton</u> Court appreciated the fact that a particular person might not necessarily have the flexibility or dexterity required to actually be able to access each and every area or container, whether open or closed, that is found inside a vehicle. Further, it also seems clear that the Court was unwilling to go into such vagaries as

4

whether a person who has long arms could reach different areas than a person who has shorter arms or other matters of that sort. Consequently, an analysis of the actual accessibility or ease of accessibility of an area or container inside a vehicle must give way to a bright line rule that as long as the area or container is found inside the vehicle, it is subject to search incident to a valid arrest.[1]

Belton also does not require that the area or container to be searched be contingent upon or relevant to the offense for which the occupant is under arrest. In fact, Belton specifically permits vehicle searches that are incident to a lawful arrest, regardless of the offense in question. "The authority to search . . . incident to a lawful custodial arrest . . . does not depend on what a court may later decide was the probability **in a particular arrest situation** that weapons or evidence would in fact be found upon the person of the suspect. . . . . [A] search incident to . . . arrest requires no additional justification. See id at 461 (emphasis added). Consequently, the fact that the case at bar involves an arrest for driving with no permit does not prohibit the officers from searching for weapons or anything else, as long as the search was incident to a valid arrest.

The government is aware of no case wherein a search of a glove compartment incident to a valid arrest was rejected merely because the glove box was locked and the occupants were not inside the vehicle at the time of the search. In fact, the case law is to the contrary. See, e.g.,

---

[1] Without this rule, the Court would have to involve itself in such analyses as whether a locked glove compartment, which may take 45 seconds to unlock and access, would have been more or less accessible to an occupant than a pill bottle having a child safety cap which has rolled under a back seat or into a crevice. Clearly, the pill bottle may take longer to access, and be further away from the occupant, however it does not appear that anyone would claim that such a bottle is not subject to search incident to a valid arrest of the vehicle's occupant.

United States v. Woody, 55 F.3d 1257 (7th Cir, 1995), upholding the legality of a search of a locked glove box even though the search occurred while the defendant was handcuffed inside of a police vehicle.

**2. The defendant's statements made before being given Miranda warnings should not be suppressed, because they were spontaneous utterances initiated by the defendant.**

Defendant initiated a discussion with the police officer by asking about the charge he was facing. At no time did the officer question the defendant at this point, or make any statement designed to illicit an incriminating remark. Such spontaneous statements, whether made before or after arrest or the reading of Miranda rights, are free from constitutional objection. (Miranda v. Arizona, 384 U.S. 436 (1966) (Miranda rules apply only where there is both custody and interrogation)); Morris v. United States, 469 A.2d 432 (D.C. 1983); Rhode Island v. Innis, 446 U.S. 291 (1980). Here, since the defendant initiated his statement to the police, Miranda was not violated. See Edwards v. Arizona, 101 Sct 1880 (1981).

Defendant claims that all statements made by him were made involuntarily, and states that this will be established at a hearing on this matter. However, defendant has alleged no specific facts to indicate that the defendant's statements to the officer were involuntary, and in fact, no such facts exist. There will be no evidence to support such a claim, and the defendant's motion is devoid of any facts upon which such a claim can be based. Consequently, the motion should be denied on that basis as well.

Defendant's motion does not request suppression of the statements made by the defendant after Miranda warnings were given, consequently, the government does not address the legality of those statements here.[2]

WHEREFORE, for these reasons and any other reasons as may appear to the Court at a hearing on this matter, the government submits that the evidence and the statements in this case were lawfully obtained, and that consequently, the defendant's Motion to Suppress Evidence and Statements should be denied.

                              Respectfully submitted,

                              KENNETH L. WAINSTEIN.
                              UNITED STATES ATTORNEY

By: _____
  WANDA J. DIXON
  Assistant United States Attorney
  Organized Crime and Narcotics Trafficking Section
  555 Fourth Street, N.W., Room 4122
  Washington, D.C. 20530
  202/514-6997

---

[2] The Government acknowledges , however, that those statements may be subject to analysis for admission in this case based on relevancy.